

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2005

# Cellular Telephone v. Zoning Bd Adjustment

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3221

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Cellular Telephone v. Zoning Bd Adjustment" (2005). *2005 Decisions.* Paper 763.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/763

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3221

_____

CELLULAR TELEPHONE WIRELESS, d/b/a *AT&T WIRELESS

v.

THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF NORTH BERGEN

Appellant

*(Amended in accordance with the Clerks' Order dated 9/2/04)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-05972)
District Judge: Honorable John C. Lifland

_____

Argued April 22, 2005
Before: ROTH, FUENTES, and STAPLETON, Circuit Judges.

(Filed:  August 1, 2005)

GERALD J. MONAHAN (ARGUED)
322 48th Street
Union City, NJ 07087
        *Attorney for Appellant*

KENNETH J. WILBUR (ARGUED)
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, NJ 07932-1047
        *Attorney for Appellee*

FUENTES, <u>Circuit Judge</u>.

This appeal involves the interaction between the (federal) Telecommunications Act of 1996 (TCA) and New Jersey state zoning laws. It presents the question whether the North Bergen zoning board's decision to deny AT&T's application for a variance to allow the company to install microcell equipment on an already nonconforming commercial building in a residential area is supported by substantial evidence, as required by federal law. The District Court found that substantial evidence supported the board's finding that AT&T failed to show that the building was particularly suited for the use, as required by New Jersey law. However, it went on to find that such a showing was not necessary because the New Jersey Supreme Court would find that microcell installations are inherently beneficial uses, obviating the need to show particular suitability. Accordingly, the District Court granted summary judgment in favor of AT&T on its claim that the board's decision is not supported by substantial evidence. We will affirm the District Court because we find that AT&T carried its burden of showing particular suitability. We do not reach the inherently beneficial use question that formed the basis of the District Court's decision.

**I.**

-2-

As we write for the parties, who are familiar with the facts of the case, we will only offer a brief summary. Cellular Telephone Company d/b/a AT&T Wireless ("AT&T") provides wireless telecommunications services, and is licensed to do so by the FCC. In order to ameliorate a coverage problem, AT&T sought a variance from the North Bergen zoning board (the "Board") to place a "microcell" installation–two small cabinets and two small antennas–on the roof of an office building (the Zepter Building or the "Building") in a residential zone.[1] The Building is already a nonconforming use and sits next to a large gas station. It is located in an ideal and unique spot that allows the small "microcell" equipment to fix the coverage problem.

At the hearing before the Board, AT&T had several experts testify to the idealness of the location and the minor intrusiveness of the equipment. However, one of the experts testified that it might be possible to use two installations in nonresidential zones at the ends of the gap pointing in to solve the problem, but that no alternative site feasibility study had been done.

The Board denied the permit, finding that AT&T failed to demonstrate that the proposed site was particularly suited for the use, because AT&T did not investigate alternative nonresidential locations for the equipment. Additionally, the Board found that

---

[1]It became clear at oral argument that the microcell was actually installed after the District Court's decision. However its continued presence is conditional on our resolution of this case. Accordingly, there is no mootness problem. Also, notwithstanding the installation of the equipment, we refer to the variance as a proposed variance in this opinion as we believe that it allows for a more natural reading.

the equipment would be an unnecessary and unacceptable eyesore for the objecting condominium owners.

AT&T filed suit in the District Court, claiming, among other things, that the decision was not supported by substantial evidence, as required by the TCA. AT&T moved for summary judgment on this claim. The District Court held that the Board's first finding regarding the suitability of the location was supported by substantial evidence because AT&T failed to explore alternatives even though it conceded that they exist. As to the "eyesore" finding, the District Court found that substantial evidence was lacking. However, after supplemental briefing, the District Court predicted that the New Jersey Supreme Court would find that the mounting of personal wireless facilities on existing structures is an inherently beneficial use, thereby obviating the need to show that the site was particularly suited to the use. Because of this ruling, AT&T was awarded the relief that it sought (the reversal of the Board's rejection). The Board appeals.

The Board argues that the District Court erred in concluding that the New Jersey Supreme Court would confer inherently beneficial use status on building-mounted microcells. AT&T argues that the District Court erred in concluding that AT&T failed to demonstrate particular suitability.

The District Court had federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, because 47 U.S.C. § 332(c)(7)(B)(iii) subjects state and local zoning board decisions to federal court review. This Court has jurisdiction over the final order of the

District Court under 28 U.S.C. § 1291.

## II.

The Telecommunications Act expressly preserves local zoning authority over the placement, construction, and modification of personal wireless service facilities. See 47 U.S.C. § 332(c)(7)(A). However, one provision provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.'" See Cellular Tel. Co. v. Zoning Bd. of Adjustment (Ho-Ho-Kus), 197 F.3d 64, 71 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quotations omitted)).[2]

"In the context of § 332(c)(7)(B)(iii), the decision process itself is governed by applicable state and local zoning laws." Id. at 72. Thus, our task "is to determine whether the [zoning board's] decision, as guided by local law, is supported by substantial evidence." Id. "Under New Jersey law, local zoning officials must weigh the positive and negative factors associated with a requested zoning variance and determine whether,

---

[2]This deferential standard is similar to the standard of review used by the New Jersey courts with respect to zoning board determinations, under which the "courts will defer to a decision if it is supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 704 A.2d 1271, 1280 (N.J. 1998).

on balance, those factors weigh in favor of granting or rejecting the request." Id. "If the proposed use is deemed 'inherently beneficial,' the positive criteria requirement is automatically satisfied." Id. Otherwise, the party seeking the variance must show that "the proposed site is particularly suitable for the proposed use."[3] Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 650 A.2d 340, 345 (N.J. 1994). With respect to the negative criteria, a court must balance the positive criteria against the negative impact of the use, "'and determine whether, on balance, the grant of the variance would cause a substantial detriment to the public good.'" Smart, 704 A.2d at 1283 (quoting Sica v. Bd. of Adjustment, 603 A.2d 30, 37 (N.J. 1992)).

## III.

The District Court held that the Board's finding that AT&T had not shown particular suitability was supported by substantial evidence. We will consider AT&T's challenge to this conclusion first. The particularly suited use factor requires a finding that

---

[3]In lieu of particular suitability, an applicant can show "undue hardship," which requires a showing that the property cannot reasonably be developed with a conforming use. See Medici v. BPR Co., 526 A.2d 109, 110 n.1 (N.J. 1987). There is no claim of undue hardship in this case.

In addition to particular suitability, an applicant may also need to show that the use promotes the general welfare. New Brunswick Cellular Tel. Co. v. Borough of S. Plainfield Bd. of Adjustment (South Plainfield), 733 A.2d 442, 449 (N.J. 1999) ("The positive criteria test whether a proposed use promotes the general welfare and is particularly suited for the site." (emphasis added)). But see id. at 445 ("Generally speaking, 'to satisfy the positive criteria, an applicant must prove that 'the use promotes the general welfare because the proposed site is particularly suitable for the proposed use.'" (quoting Smart,704 A.2d at 1278 (quotation omitted))). In any case, "[w]ith telecommunications towers, an FCC license generally establishes that the use promotes the general welfare." Id. at 449. Accordingly, there appears to be no question that the microcell installation here similarly serves the general welfare insofar as that determination is separate from particular suitability.

the general welfare is served because the use is peculiarly fitted to the specific location for which the variance is sought in order to be satisfied. See Kohl v. Mayor of Fair Lawn, 234 A.2d 385, 391 (1967). Generally, a showing of need plus reasons why the particular site is especially appropriate satisfies the requirement. See, e.g., South Plainfield, 733 A.2d at 450. However, an applicant need not show that the proposed site is the only site suitable for the use. Medici v. BPR Co., 526 A.2d 109, 112 n.4 (N.J. 1987).[4]

Here, AT&T demonstrated a need for the facility at that location, (DA 31), and therefore the case turns on whether it showed reasons why the Building was an especially appropriate site for the use. This issue centers around the extent to which a party requesting a variance for cellular service equipment must show the inadequacy of other sites. The Board found that AT&T had failed to consider alternative sites in nonresidentially zoned areas. The dispute arose from the testimony of one of AT&T's experts, who, when asked whether two nonresidential installations could be used to achieve the same coverage, stated that it would be "possible if [AT&T] had a cell site, say to the south pointing north and a cell site to the north pointing south to fill the [service] gap." (Appendix of Appellee (PA) 65-66.) However, he also testified that the Building

---

[4]Although a somewhat recent Appellate Division case could be read to support the idea that all alternatives must be ruled out, subsequent Appellate Division cases have explicitly retreated from such a position. Compare N.Y. SMSA Ltd. P'Ship v. Bd. of Adjustment, 734 A.2d 817, 820-21 (N.J. Super. Ct. App. Div. 1999), with Ocean County Cellular Tel. Co. v. Township of Lakewood Bd. of Adjustment (Lakewood), 800 A.2d 891, 899-900 (N.J. Super. Ct. App. Div. 2002), and Sprint Spectrum, Ltd. P'Ship v. Zoning Bd. of Adjustment (Leonia), 823 A.2d 87, 98 (N.J. Super. Ct. App. Div. 2003)).

was "the best candidate in the area." Id. at 40.

The concept of particular suitability appears to elude precise definition. It is an extremely fact-bound inquiry, which does not lend itself to concrete rules.[5] There are a number of cases in which New Jersey courts have overturned denials of variance applications with respect to wireless communication facilities. See, e.g., N.Y. SMSA v. Bd. of Adjustment (Weehawken), 851 A.2d 110, 119-20 (N.J. Super. Ct. App. Div. 2004); Leonia, 823 A.2d 87; Lakewood, 800 A.2d 891. We look to these cases for guidance.

In Lakewood, Comcast sought "to erect twelve antenna[s] on an existing multi-story building in Lakewood, Ocean County." 800 A.2d at 893. "According to its written resolution, the Board denied [the] application because of: (1) the 'detrimental visual impact' the antenna[s] will have; (2) the public's 'fear and apprehensions' about radio frequency (RF) emissions; and (3) the existence of other suitable locations for the proposed facility." Id. The building was "located in the residential, office-professional zone (ROP), or hotel district, which has among its principle uses professional offices, churches and other houses of worship, and residential dwellings." Id. at 894. The Court

---

[5]We see no error in the District Court's general reasoning that a zoning board plausibly could reject a wireless coverage variance application with respect to a residential zone when it finds that a possibility exists to provide the same coverage using two installations in nonresidential zones. The two recent opinions AT&T cites to suggest that one site is always better than two are both unpublished (and of no precedential value) and are more nuanced than that. As noted above, we believe that the particular suitability question is a fact-intensive one, requiring consideration of the particulars of any given situation.

found that Comcast's FCC license established that use promotes the general welfare. Id. at 897. The Court also found that "Comcast presented compelling evidence demonstrating that its site was particularly suited for its proposed" use because it was located in a mixed-use zone and it was "utilizing an existing structure, rather than constructing a monopole or lattice tower." Id. at 898. The Court was troubled with the board's rejection of the application based on the availability of (unspecified) better locations, as it could create a "daunting" and possibly "impossible" burden of disproving the possible existence of better sites. Id. at 899. Accordingly, the Court reversed the board's positive criteria findings. After rejecting the negative criteria findings, the Court reversed the board's denial of the variance application.

In Leonia, Sprint "applied to the [zoning board] for a variance to affix nine small antennas to the roof of an existing five-story apartment building located in a residential zone." 823 A.2d at 89. The Board denied the application, but the Law Division reversed, and the board appealed. Id. The building was "located partially within the A-4 Single Family Residential zoning district, and partially within the B Multiple Family Residential zoning district." Id. In explaining why the location was ideal, Sprint's expert noted that "using two separate antennas in other locations would be insufficient to fill the gap in coverage." Id. at 91. The Board's expert testified that there was a potential two-installation solution, but that it was inferior to Sprint's proposed solution. Id. at 97. Noting that the facts of the case had a striking similarity to those in Lakewood, the Court

labeled the board's suggestion that better sites exist "conjecture" and reversed the finding that the site was not particularly suited to the use. Id. at 98. The Court also rejected the negative criteria finding, and affirmed the Law Division's reversal of the board. Id. at 100.

In Weehawken, the most recent case of note, the Appellate Division was faced with a situation in which Verizon applied for permission to install rooftop microcell equipment, but the Board denied the application because "the proposal did not satisfy the positive or negative criteria for the grant of a use variance." Id. at 112. Specifically, Verizon "chose a five-story, residential apartment building at 117 Parkview Avenue as the ideal location for [a] new cell site" and "proposed to place fifteen antennas, arranged in three sets of five, on the building's roof." Id. at 114. Verizon's engineer, Dominic Villecco, testified that the site was especially suitable because "it gave [Verizon] the ability to see all the problem areas that we have" and, in response to a query as to whether a particular water tower would suffice, explained why it would not. Id. Villecco "concluded that there was no other potential location that would solve the coverage problem as effectively as the proposed site." Id. "The Board presented no experts on its own behalf." Id. at 115. Like here, on appeal, the zoning board did not attempt to rely on the negative criteria, addressing only the issue of particular suitability. Id. at 121. The Court stressed the factual similarity between the case and Lakewood and Leonia, and reversed the board's rejection of the variance application.

It is quite apparent from the cases discussed above that the New Jersey appellate courts, when applying the deferential substantial-evidence-like state standard, have reversed zoning board determinations when the courts are satisfied that a showing of particular suitability has been made. In Lakewood, the positive criteria were satisfied because "[(1)] the building was located in the center of the area which was experiencing blocked cellular phone calls; [(2)] the zone included a mixture of uses, including professional offices, schools, houses of worship, and both single and multi-family dwellings; and [(3)] the carrier intended to utilize an existing structure, rather than construct a monopole or tower." Leonia, 823 A.2d at 96 (describing the Lakewood decision). Here, (1) one of AT&T's experts testified that the Building was "the best candidate in the area," (PA 40), as it was located in the center of the coverage gap; (2) although the zone is residential, there are nonconforming uses, including a gas station and the Zepter building itself, where the microcell would be placed; and (3) AT&T intends to utilize an existing structure, instead of erecting a new monopole or tower. The Board does not dispute any of these facts, nor does it attempt to discredit the witnesses that testified to them. Also, as in the cases above, the Board did not identify any particular sites that would be superior to the Building[6] or make findings that the experts were not

---

[6]Of course, the burden of showing particular suitability is on the applicant. See Smart, 704 A.2d at 1278. However, where, as here, an applicant demonstrates the suitability of its chosen location and its belief that no other more-suitable site exists through testimony before the board, the onus, in a sense, shifts to the zoning board (or other objectors) to show why the location is unsuitable in comparison to other alternatives.

-11-

credible.  Thus, there are compelling reasons as to why the Building is particularly suited for the use (especially the nonresidential nature of the buildings in the immediate area in which the microcell is to be located).  The fact that an expert admitted that it is conceivable that nonresidential sites exist on both sides of the gap that would allow coverage of the gap through two installations does not render the Building unsuited for the proposed use.

We conclude that the Board's finding that AT&T failed to satisfy the positive criteria is unsupported by substantial evidence in the record.  The Board has not appealed the District Court's determination that the Board's negative criteria finding is unsupported by substantial evidence.  Accordingly, the Board's denial of AT&T application for a variance cannot stand.  Because of this determination, we need not reach the issue of whether the microcell constitutes an inherently beneficial use.

**IV.**

For the reasons discussed above, we will affirm the order of the District Court.

———